UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 0:23-cv-61094 |
| ORIGIS USA LLC; and GUY VANDERHAEGEN, | ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT FOR DECLARATORY RELIEF

NOW COMES Great American Insurance Company ("Great American"), by and through its undersigned counsel, and for its Complaint for Declaratory Relief, pursuant to 28 U.S.C. § 2201, against Origis USA LLC ("Origis USA"), and Guy Vanderhaegen ("Vanderhaegen") (collectively, "Defendants"), states as follows:

## I. INTRODUCTION

1.      This lawsuit involves an insurance coverage dispute. Great American issued a Management Liability Insurance Policy (the "Policy") which, subject to its terms, conditions, exclusions, and endorsements, provides coverage to Defendants.  On February 14, 2023, the Underlying Lawsuit was filed against Defendants for which Defendants seek coverage under the Policy.

2.      Specifically, the Underlying Lawsuit was brought by two shareholders (the "Shareholders") who each owned approximately a 29% interest (or, collectively 58%) in Origis USA. On September 14, 2020, the Shareholders entered into Share Redemption Agreement ("SRA") with Origis USA whereby the Shareholders sold all of their shares back to Origis USA

Page 1

for approximately $105,000,000.  The Underlying Lawsuit alleges the Defendants engaged in a "deliberate and fraudulent scheme to acquire [the Shareholders'] combined majority interest in Origis *for a price far below its true value*" (¶1) and that the Defendants "acquire[d] [the Shareholders'] shares at *a grossly inadequate price*" (¶27) (emphasis added).  Specifically, the Underlying Lawsuit alleges Defendants "withheld critical information from and intentionally misrepresented material facts to Plaintiffs relating to the value of Origis and its assets" (¶2).  The Shareholders allege "Defendants did all this intentionally *to steal large amounts of money from Plaintiffs in order to enrich themselves*" (¶126) (emphasis added). As damages, the Shareholders seek "the difference between the payments received [$105 million] and the actual value of their shares [over $500 million]," (¶31) which constitutes restitutionary relief.

3.      Based on the allegations of the Underlying Lawsuit, the Policy does not afford coverage for the same for numerous reasons.  *First*, the Underlying Lawsuit seeks restitutionary relief as damages which is not insurable under Florida law and, therefore, does not constitute "**Loss**" under the Policy. *See, e.g., CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.*, 291 Fed. Appx. 220, 223 (11th Cir. 2008)).

4.      *Second*, the Policy's definition of "**Loss**" expressly states it "shall not include:… that portion of damages, judgments or settlements arising out of any **Claim** *alleging* that *the Company paid an inadequate price* or consideration for the purchase of any securities" (the "Inadequate Price Exclusion").  Here, the entire foundation of the Underlying Lawsuit is that the Defendants "acquire[d] [the Shareholders'] shares at *a grossly inadequate price*" (¶27), such that the Inadequate Price Exclusion bars coverage in whole or in part for the Underlying Lawsuit.

5.      *Third*, the Policy contains a Capacity Exclusion which excludes coverage for "any **Claim**" (*i.e*., the Underlying Lawsuit) "made against *any **Insured***** for any **Wrongful Act** of any

**Insured Persons** serving as a director, officer,…of any entity other than the **Company** [Origis USA]…". Here, the Underlying Lawsuit alleges that Defendant Vanderhaegen was the "sole director, officer" of four non-insured entities, and further alleges that "Defendant Guy Vanderhaegen…acted at all relevant times…in his capacity as officer, director…of the remaining Defendants [including four non-insured entities]." Given the allegations against Vanderhaegen are asserted against him in multiple different "officer" capacities, the Capacity Exclusion bars coverage in whole or in part for the Underlying Lawsuit.

6. _Fourth_, the Policy contains a Contract Exclusion which excludes coverage for **Loss** in connection with any **Claim** made against the **Company** for any actual or alleged breach by the Origis entities of an express or implied contract. Here, the Underlying Lawsuit is predicated on the Defendants' alleged breach of the SRA (_e.g._, "Section 4.4 of the SRA included a representation and warranty that…Origis had provided all information material to the valuation of Origis (the 'Information Warranty')…Defendants breached the Information Warranty…[b]y breaching the Information Warranty and Covenant, Defendants injured [Shareholder] Plaintiffs by causing them to transfer their shares for far less than their true value." ¶¶90, 157-58), and the Contract Exclusion applies in whole or in part to the **Company** with respect to the Underlying Lawsuit.

7. _Fifth_, alternatively, the Policy contains an Allocation Provision that provides any **Claim** that includes "both covered and uncovered matters" or "is made against others (including **Insureds** who are not extended coverage for such **Claim**)," that "the **Insured** and the **Insurer** recognize there must be an allocation between covered **Loss** and uninsured amounts." To the extent the Policy provides coverage for the Underlying Lawsuit, the Allocation Provision of the Policy is implicated.

8.      Based on the "no **Loss**" argument, Inadequate Price Exclusion, the Capacity Exclusion, and/or the Contract Exclusion, the Policy does not afford coverage in whole or in part for the Underlying Lawsuit.

9.      Although Great American does not believe coverage is afforded under the Policy for the Underlying Lawsuit, based on the Policy's Allocation and Advancement Provisions, after satisfaction of the Policy's $100,000 Retention, and the application of any other insurance, Great American will advance a portion of the **Costs of Defense** related to the Underlying Lawsuit, subject to the Policy's express provision that "in the event it is established that the **Insurer** has no liability under the Policy for such **Loss**, the **Insureds** will repay the **Insurer** upon demand all **Costs of Defense** advanced."

10.     Defendants have sought coverage for the Underlying Lawsuit, and an actual controversy exists between Defendants and Great American regarding Great American's purported obligation to pay the **Costs of Defense** and/or indemnification of Defendants for the Underlying Lawsuit, and this controversy cannot be resolved without a declaration of the rights and responsibilities of the parties by this Court.

## II. <u>THE PARTIES</u>

11.     Great American is a corporation organized under the laws of the State of Ohio with its principal place of business located at 301 E Fourth Street, Cincinnati, Ohio, 45202.

12.     On information and belief, Defendant "Origis USA LLC is a citizen of Delaware and Florida.  The sole member of Origis USA LLC is Gator Midco, Inc., which is a Delaware corporation with its principal place of business in Florida." (Quotation taken from Origis USA LLC's Rule 7.1 Statement filed on March 17, 2023 in the Underlying Lawsuit.)

281864744v.1

13.     On information and belief, Defendant "Vanderhaegen is a citizen of Florida." (Quotation taken from Vanderhaegen's Rule 7.1 Statement filed on March 14, 2023 in the Underlying Lawsuit.)

### III. JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the relevant events occurred in this district, including receipt of the Policy by Origis USA LLC at its Miami address (800 Brickell Avenue, Suite 1100), the named insured under the Policy.

### IV. BACKGROUND FACTS

**A.      The Great American Policy**

16.     Great American issued to Origis USA LLC a Management Liability Solutions 2.0 Insurance Policy, Policy Number DOLE069395, for the **Policy Period** of June 10, 2021 to June 10, 2022, and through Coverage Part A., the Policy provides for Directors' and Officers' and Entity Liability Coverage with a shared Limit of Liability of $5 million, subject to a $100,000 Retention. Through Endorsement No. 6, with respect to Coverage Part(s) A & B, the coverage granted under Section I. of the General Terms and Conditions (**Discovery Period**) is extended with respect to any **Claim** first made against any **Insured** for a period of 72 months ending 11/18/2027 but only with respect to any **Wrongful Act** committed on or before 11/18/2021 and otherwise covered by this Policy.

17.     A true and correct copy of the Policy is attached hereto as Exhibit 1, and incorporated herein by reference.

281864744v.1

18.     Sections I. of the D&O Coverage Part of the Policy provides the Insuring Agreements I.A., I.B., and I.C. of the Policy, which provide:

**Section I.        Insuring Agreements**

**A.        Insured Persons Liability Coverage**

The **Insurer** shall pay on behalf of any **Insured Person** all **Loss** which the **Insured Person** shall be legally obligated to pay as a result of a **Claim** first made against an **Insured Person** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, except for any **Loss** which the **Company** actually pays as indemnification.

**B.        Insured Persons Reimbursement Coverage**

The **Insurer** shall pay on behalf of the **Company** all **Indemnifiable Loss** which any **Insured Person** shall be legally obligated to pay as a result of a **Claim** first made against an **Insured Person** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**.

**C.        Company Coverage**

The **Insurer** shall pay on behalf of the **Company** all **Loss** which the **Company** shall be legally obligated to pay as a result of a **Claim** first made against the **Company** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**.

19.     Section II.A. of the D&O Coverage Part of the Policy defines "**Claim**," to include:

"(2) a civil proceeding commenced by the service of a complaint or similar pleading, or any appeal thereof;".

20.     Section II.I. of the D&O Coverage Part of the Policy defines "**Loss**," in part, as:

(1)     compensatory damages, punitive or exemplary damages, or the multiple portion of any multiplied damage award;

(2)     settlements;

(3)     judgments, including pre-judgment interest, post-judgment interest;

                    *                    *                    *

(5)     **Costs of Defense**; and

                    *                    *                    *

Provided, however, **Loss** shall not include:

                    *                    *                    *

(8)     that portion of damages, judgments or settlements arising out of any **Claim** alleging that the **Company** paid an inadequate price or consideration for the purchase of any

securities representing the amount by which such price or consideration is effectively increased, but only with respect to coverage provided under Insuring Agreements I.B. and I.C.;

(9)     any amount allocated to uninsured amounts pursuant to Section V. of the General Terms and Conditions; or

(10)    any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

21.     Section II.O.(1) and (2) of the D&O Coverage Part of the Policy defines "**Wrongful Act(s)**," in part, as:

(1)     any actual or alleged act, omission, error, misstatement, misleading statement, neglect, breach of duty by any **Insured Persons** in their capacity as such, including any **Employed Lawyer Legal Services Wrongful Act**, or any matter claimed against any **Insured Persons** by reason of their status as **Insured Persons**;

(2)     with respect only to Insuring Agreement I.C., any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Company**; or…

22.     Section III.B. of the D&O Coverage Part of the Policy (the "Capacity Exclusion") provides:

With respect to Insuring Agreements I.A.-I.C., the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** for any **Wrongful Act** of any **Insured Persons** serving as a director, officer, trustee, regent or governor of any entity other than the **Company**, including but not limited to an **Outside Entity**, even if directed or requested to serve as a director, officer, trustee regent or governor of such entity.

23.     Section III.C.(1) of the D&O Coverage Part of the Policy (the "Contract Exclusion") provides:

With respect to Insuring Agreement I.C., the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Company**:

(1)     for any actual or alleged breach by the **Company** of an express or implied contract except and to the extent the **Company** would have been liable in the absence of such contract;

24.     Section III.A. of the D&O Coverage Part of the Policy (the "Conduct Exclusions") provides:

Page 7

With respect to all Insuring Agreements, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

(1) brought about or contributed to by:

  (a) any **Insureds** gaining any personal profit, financial advantage or remuneration to which they were not legally entitled; or

  (b) the deliberately fraudulent or deliberately criminal acts of any **Insureds**;

provided, however, this exclusion: (i) shall not apply unless and until there is a final, non-appealable adjudication as to such conduct in the underlying proceeding; and (ii) shall not apply to **Loss** under Insuring Agreement I.B…

25. Endorsement No. 3 of the D&O Coverage Part of the Policy (the "Origis Energy Exclusion") provides:

With respect to Coverage Part(s) A , it is understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** brought by or on behalf of Origis Energy, NV and/or its subsidiaries or affiliates and/or the directors or officers of such entities or any matters related thereto.

26. Section IV.A. of the D&O Coverage Part of the Policy (the "Other Insurance") provides:

If any **Loss** under this Coverage Part is insured in whole or in part by another valid and collectible policy or policies (except with respect to any excess beyond the amount or amounts of coverage under such other policy or policies), including any Directors' and Officers' Liability Insurance and/or Reimbursement Insurance, provided for, to, by or on behalf of the **Outside Entity** or its directors, officers, trustees, regents or governors, this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, except as provided under Section VII. of the General Terms and Conditions of this Policy.

27. Section V.A. of the General Terms and Conditions of the Policy (the "Allocation Provision") provides:

If the **Liability Coverage Parts** are subject to Indemnity coverage or the **Insured** assumes the defense of a **Claim** pursuant to Section VI.A.(4), then as to any **Claim** made against any **Insured** that includes both covered and uncovered matters pursuant to this Policy or is made against others (including **Insureds** who are not extended coverage for such **Claim**) the **Insured** and the **Insurer** recognize there must be an allocation between covered **Loss** and uninsured amounts.  The **Insureds** and **Insurer** shall use their best efforts to agree

Page 8

upon a fair and proper allocation; provided, however, if there is no agreement on an allocation of **Loss**, the **Insurer** shall advance **Costs of Defense** and any other **Loss** which the **Insurer** believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined.

**B.    The Lawsuit**

28.    On or about February 14, 2023, the Underlying Lawsuit was filed, captioned:

*Pentacon BV and Baltisse NV v. Guy Vanderhaegen, Guy Vanderhaegen Revocable Trust, Pelican Invest, LLC, Pelican International, LLC, Origis Energy LLC, formerly Origis Energy NV, and Origis USA LLC*, and was originally filed in the Supreme Court of the State of New York (New York County), but the Underlying Lawsuit was removed by the Defendants to the United States District Court for the Southern District of New York, Case No.: 23-cv-02172-KPF.

29.    A true and correct copy of the Underlying Lawsuit is attached hereto as Exhibit 2, and incorporated herein by reference.

30.    The Underlying Lawsuit was brought by two Shareholders who each owned approximately a 29% interest (or, collectively 58%) in Origis USA. On September 14, 2020, the Shareholders entered into Share Redemption Agreement ("SRA") with Origis USA whereby the Shareholders agreed to sell all of their shares back to Origis USA for approximately $105,000,000. Pursuant to "Section 4.4 of the SRA included a representation and warranty that…Origis had provided all information material to the valuation of Origis (the 'Information Warranty')" (¶90). However, the Underlying Lawsuit alleges "Defendants breached the Information Warranty" (¶157), as the Defendants allegedly "withheld critical information from and intentionally misrepresented material facts to Plaintiffs relating to the value of Origis and its assets" (¶2). Moreover, the Defendants' withholding of information was part of a "deliberate and fraudulent scheme to acquire [the Shareholders'] combined majority interest in Origis for a price far below its true value" (¶1) and that the Defendants "acquire[d] [the Shareholders'] shares at a grossly

inadequate price" (¶27).  As damages, the Shareholders seek "the difference between the payments received [$105 million] and the actual value of their shares" (¶31), resulting in Shareholder Plaintiffs "damage[s] in an amount well in excess of half a billion dollars" (¶6).

31.    The Underlying Lawsuit names six defendants, but only two are potential "**Insureds**" under the Policy: Guy Vanderhaegen and Origis USA LLC.  Defendants Guy Vanderhaegen Revocable Trust, Pelican Invest, LLC, Pelican International, LLC, Origis Energy LLC (formerly Origis Energy NV) do not qualify as "**Insureds**" under the Policy.

**C.**    **Application of the Policy's Terms, Conditions, Exclusions, and Endorsements**

      *i.*    *The "No Loss" Doctrine*

32.    The Policy's definition of "**Loss**" expressly provides that "**Loss** shall not include:… any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed."  Here, the damages sought by Plaintiffs in the Underlying Lawsuit are "damages based on the difference between the payment they received [*i.e.*, "$105 million" (¶103)] and the value of their shares based on the Antin purchase price [*i.e.*, "$1.4 billion Antin purchase" (¶124)] and/or the present value of the interests which were unlawfully taken from them" (¶31).  Under Florida law, such damages are "uninsurable under the law pursuant to which this Policy shall be construed."  *See, e.g., CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.,* 291 Fed. Appx. 220, 223 (11th Cir. 2008) ("The policy covers a 'loss' that the insured is obligated to pay. 'The interpretive principle… that a "loss" within the meaning of an insurance contract does not include the restoration of ill-gotten gains--is clearly right.' *Level 3 Communs., Inc. v. Fed. Ins. Co*., 272 F.3d 908, 910 (7th Cir. 2001). Because we conclude that the payment to the Purchaser Class was restitutionary in nature, the payment was not a loss covered by the Twin City policy."); *Phila. Indem. Ins. Co. v. Sabal Ins. Grp., Inc*., 2017 U.S. Dist. LEXIS 159508, *10 (S.D. Fla. Sept. 28,

2017) ("'As a matter of law, "Loss" does not include the "restoration of ill-gotten gains"'"), *aff'd*, 786 Fed. Appx. 167 (11th Cir. 2019); *Twin City Fire Ins. Co. v. CR Techs., Inc.*, 90 F. Supp. 3d 1320, 1325 (S.D. Fla. Mar. 11, 2015) ("As a matter of law, 'Loss' does not include the 'restoration of ill-gotten gains.' *See CNL*, 291 F. App'x at 223 (quoting *Level 3*, 272 F.3d at 910).")

33. Based on the allegations of the Underlying Lawsuit, coverage is excluded in whole or in part based on the "no Loss" doctrine.

### ii. *The Inadequate Price Exclusion*

34. The Policy's definition of "**Loss**" expressly provides that "**Loss** shall not include:… that portion of damages, judgments or settlements arising out of any **Claim** alleging that the **Company** paid an inadequate price or consideration for the purchase of any securities representing the amount by which such price or consideration is effectively increased, but only with respect to coverage provided under Insuring Agreements I.B. and I.C."

35. Here, the Underlying Lawsuit is replete with allegations that the Shareholders received an "inadequate price or consideration" for the sale of their shares, including (but not limited to) Defendants' engaged in "deliberate and fraudulent scheme to acquire Plaintiffs' combined majority interest in Origis for a price far below its true value" (¶1), Defendants "fraudulently induced Plaintiffs to execute, consummated a scheme to fraudulently seize Plaintiffs' shares at a grossly deficient price" (¶4), "used similar misrepresentations and omissions to execute a plan to profit at Plaintiffs' expense by acquiring their combined majority shareholding interest at a bargain price" (¶14); "[i]n pursuit of a scheme to seize Plaintiffs' shareholding at a price far below its real value" (¶16); "to induce Plaintiffs to sell their shares in Origis at what Defendants knew to be a grossly deficient price" (¶24); "Vanderhaegen's fraudulent scheme to acquire Plaintiffs' shares at a grossly inadequate price" (¶27); "Pentacon and Baltisse are therefore entitled

to damages based on the difference between the payment they received and the value of their shares based on the Antin purchase price and/or the present value of the interests which were unlawfully taken from them" (¶31); "[i]nstead of providing complete and accurate information about Origis' business, Vanderhaegen deliberately gave Plaintiffs information, which he knew to be inaccurate, that appeared to support a low buyout price" (¶57); "Defendants' intentionally false and misleading statements about the value of Origis and the value of its pipeline of solar energy projects induced Plaintiffs to agree to a buyout at an artificially low share price" (¶67); "Vanderhaegen deliberately misled Plaintiffs into proceeding with a grossly unlawful transaction at a dramatically low price on the basis of wholly fabricated misrepresentations" (¶76); "Defendants pressed forward with their plan to buy out Plaintiffs at the contrived, grossly deficient price which they had put forward" (¶82); "Defendants kept this critical information secret for one reason and one reason only—to defraud Plaintiffs into accepting a grossly deficient price for their interest in Origis…" (¶96); "[a]s the direct result of Defendants' intentional misrepresentations and the concealment of highly material information on multiple occasions, Plaintiffs conveyed their shares to Origis in accordance with the SRA on the dates of the First Closing, October 15, 2020, and the Second Closing, January 4, 2021. In exchange, Plaintiffs received about $105 million, a price which Defendants knew, but Plaintiffs did not, was unconscionably low" (¶103); "[b]etween 2019 and 2021, Defendants engaged in a fraudulent scheme, including multiple independent frauds, in order to take control of Origis, acquire Plaintiffs' shares in Origis at a fraudulently low price, and then promptly turn around and sell the company for a dramatically higher amount. Defendants did all this intentionally to steal large amounts of money from Plaintiffs in order to enrich themselves" (¶126); "Defendants deliberately misrepresented these material facts and omitted material Information…to acquire Plaintiffs' shares in Origis at what they knew to be a fraudulent and

abysmally deficient price" (¶128); "Plaintiffs justifiably relied to their detriment on Defendants' misrepresentations and omissions in at least the following ways: (a) agreeing to sell their controlling interest in Origis to Vanderhaegen, (b) agreeing to an artificially low price for Origis" (¶129); "Plaintiffs suffered injury because of Defendants' fraudulent scheme and acts because they were thereby induced to sell their shares in Origis to Defendants for a price dramatically below their true value" (¶130); "Defendants deliberately misrepresented these material facts and omitted material information…allowing Defendants to acquire Plaintiffs' shares in Origis at what they knew to be a fraudulent and abysmally deficient price" (¶135); "Plaintiffs were injured because they were induced to execute the SRA, through which they sold their controlling interest in Origis for a price dramatically below its true value" (¶137); "Defendants misrepresented these material facts and omitted material information…to induce Plaintiffs into surrendering their control of Origis and ultimately to sell their shares in Origis at a fraudulently deficient price" (¶142 ).

36.     Based on the allegations of the Underlying Lawsuit, coverage is excluded in whole or in part based on the Inadequate Price Exclusion.

### iii.     *The Capacity Exclusion*

37.     The Policy's Capacity Exclusion (Section III.B. of the D&O Coverage Part) provides that: "[w]ith respect to Insuring Agreements I.A.-I.C.," Great American "shall not be liable to make any payment for **Loss** in connection with any **Claim** made against *any **Insured*** for any **Wrongful Act** of any **Insured Persons** serving as a director, officer, trustee, regent or governor of any entity other than the **Company**,…".

38.     The Underlying Lawsuit names as Defendants four *non*-insured entities: (1) Guy Vanderhaegen Revocable Trust, (2) Pelican Invest, LLC, (3) Pelican International, LLC; and (iv) Origis Energy.

39.     Here, the Underlying Lawsuit alleges with respect to: (1) non-insured Defendant "Guy Vanderhaegen Revocable Trust," that "Defendant Vanderhaegen is…its sole director, officer,…" (¶35); (2) non-insured Defendant "Pelican Invest, LLC," that "Defendant Vanderhaegen is…its sole director, officer,…" (¶36), (3) non-insured Defendant "Pelican International, LLC," that "Defendant Vanderhaegen is…its sole director, officer,…" (¶37); and (4) non-insured Defendant "Origis Energy LLC, formerly Origis Energy NV," that "Defendant Vanderhaegen, in his capacity as managing director, officer…of Defendant Origis Energy LLC, at all relevant times has exercised full operational control over Defendant Origis Energy LLC" (¶38).

40.     In addition, the Lawsuit further alleges, "*Defendants have acted at all relevant times and continue to act as one combined, unified entity* under the common control of Vanderhaegen, and *Vanderhaegen has acted at all relevant times and continues to act on behalf of and through the other Defendants in accomplishing the violations of law set forth in this Complaint*. By virtue of Vanderhaegen's common control over Defendants, Defendants have agreed and acted together in pursuit of a common plan to commit the violations of law set forth in this Complaint. And, by virtue of their collective participation in the negotiation and execution of the SRA through Vanderhaegen, Defendants all intended to be bound by that contract. *Whenever one Defendant is referred to in this Complaint, that reference should be read as referring to all Defendants*" (¶40) (emphasis added).   In addition, Lawsuit further alleges: "Defendant Guy Vanderhaegen…*acted at all relevant times* and continues to act both in his own capacity and *in his capacity as officer, director*, agent, and/or employee *of the remaining Defendants*." Lawsuit, ¶34 (emphasis added).

41.     Based on the allegations of the Underlying Lawsuit, coverage is excluded in whole or in part based on the Capacity Exclusion.

*iv.*     ***The Contract Exclusion***

42.     The Policy's Contract Exclusion (Section C.(1) of the D&O Coverage Part) excludes coverage for any payment for **Loss** in connection with any **Claim** made against the **Company** for any actual or alleged breach by the **Company** of an express or implied contract."

43.     Here, the Underlying Lawsuit contains three causes of action for "Fraudulent Inducement of Contract" (Count II), "Breach of Contract – Representations and Warranties" (Count V), and "Breach of Contract – Sale of Origis" (Count VI).  Moreover, all of the causes of action are in connection with Defendants' alleged breach of the SRA including (but not limited to) "Plaintiffs justifiably relied to their detriment on Defendants' misrepresentations and omissions in at least the following ways:…(e) signing the SRA," and that "Plaintiffs are therefore entitled to a declaratory judgment that the SRA is null and void by reason of fraud" (¶¶129, 131); "[b]etween 2019 and 2020, Defendants deliberately and repeatedly misrepresented material facts and omitted material information, including but not limited to information about Origis and the various solar energy projects in its pipeline, and thereby fraudulently induced Plaintiffs into signing the SRA," "Defendants did all this with the knowledge that the misrepresentations and omissions were false and misleading, or with reckless disregard for their truth or falsity, and with the specific intent that Plaintiffs would thereby be induced to sign the SRA," "Plaintiffs justifiably relied to their detriment on Defendants' misrepresentations and omissions in at least the following ways:…(e) signing the SRA," "Plaintiffs were injured because they were induced to execute the SRA," and "Plaintiffs are therefore entitled to a declaratory judgment that the SRA is null and void by reason of fraud" (¶¶133, 135-38); "Plaintiffs justifiably relied to their detriment on Defendants'

misrepresentations and omissions in at least the following ways:…(e) signing the SRA," "Plaintiffs are therefore entitled to a declaratory judgment that the SRA is null and void by reason of fraud" (¶¶144, 146); "Defendants' breaches of their fiduciary duties to Plaintiffs caused injury to Plaintiffs, who were injured as a direct result of… (b) agreeing to sell their controlling interest in Origis …(e) selling their shares to Defendants on terms tainted by fraud" (¶151).

44.     Based on the allegations of the Underlying Lawsuit, coverage is excluded in whole or in part to any **Company** entity based on the Contract Exclusion.

### *v.     The Allocation Provision*

45.     Alternatively, to the extent that any of the terms, conditions, exclusions, and/or endorsements to the Policy do not exclude coverage in whole, but in part for the Underlying Lawsuit, then the Policy's Allocation Provision mandates an allocation as to "covered and uncovered matters" or "is made against others (including **Insureds** who are not extended coverage for such **Claim**)".

46.     An actual controversy exists as to whether Great American owes any coverage obligation to Defendants under the Policy, which controversy requires a legal determination by this Court.

### COUNT I
### Declaratory Judgment Regarding Great American's
### Duty to Reimburse Costs of Defense
### (All Defendants)

47.     Great American incorporates and restates each and every allegation set forth in Paragraphs 1-46 of this Complaint as if alleged in this Paragraph.

48.     Defendants contend that Great American has a duty to pay the **Costs of Defense** in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

281864744v.1

49.     Great American contends it has no duty to pay for any of the **Costs of Defense** in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

50.     Specifically, in accordance with the terms, conditions, exclusions, and endorsements of the Policy, Great American has no duty to pay for any of the **Costs of Defense** in connection with the Underlying Lawsuit under the Policy, in whole or in part, for the following reasons:

    a.    The "no Loss" doctrine;

    b.    The Inadequate Price Exclusion;

    c.    The Capacity Exclusion;

    d.    The Contract Exclusion;

    e.    The Conduct Exclusions;

    f.    The Origis Energy Exclusion;

    g.    The Other Insurance provision;

    h.    Alternatively, the Allocation Provision;

51.     Great American also relies upon all additional terms, conditions, exclusions, and endorsements in the Policy and not specifically identified herein that potentially limit or preclude coverage for the duty to pay for any of the **Costs of Defense** for the Underlying Lawsuit.

52.     This dispute is ripe for resolution by this Court.

53.     Great American seeks a declaration from this Court that Great American has no duty to pay for any of the **Costs of Defense** incurred in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

54.     Should this Court determine that no coverage is available for the Underlying Lawsuit and that Great American was and is not obligated to pay any portion of the **Costs of Defense**, any **Costs of Defense** advanced by Great American to the Defendants shall be repaid

281864744v.1

pursuant to Section VI.B.(3)(d) of the GT&C, which provides: "in the event it is established that the **Insurer** has no liability under the Policy for such **Loss**, the **Insureds** will repay the **Insurer** upon demand all **Costs of Defense** advanced."

WHEREFORE, Great American respectfully requests that this Court enter judgment in its favor and against the Defendants, declaring that the Policy precludes and/or limits coverage for the Underlying Lawsuit, and that Great American has no duty to reimburse the Defendants for their **Costs of Defense** for the Underlying Lawsuit. Great American further requests that this Court determine that Great American is entitled to the repayment of any **Costs of Defense** advanced to the Defendants, and orders that Defendants reimburse to Great American all **Costs of Defense** that have been advanced to Defendants at the time of the declaration that Great American has no duty to reimburse **Costs of Defense**. Great American further requests that this Court grant it any such other and further relief as this Court deems just and equitable under the circumstances.

## COUNT II
### Declaratory Judgment Regarding
### Great American's Duty to Indemnify
### (All Defendants)

55.     Great American incorporates and restates each and every allegation set forth in Paragraphs 1-54 of this Complaint as if alleged in this Paragraph.

56.     Defendants contend that Great American has a duty to indemnify them in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

57.     Great American contends it has no duty to indemnify Defendants in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

58.     Specifically, in accordance with the terms, conditions, exclusions, and endorsements of the Policy, Great American has no duty to indemnify Defendants in connection with the Underlying Lawsuit under the Policy, in whole or in part, for the following reasons:

a.     The "no Loss" doctrine;

b.     The Inadequate Price Exclusion;

c.     The Capacity Exclusion;

d.     The Contract Exclusion;

e.     The Conduct Exclusions;

f.     The Origis Energy Exclusion;

g.     The Other Insurance provision;

h.     Alternatively, the Allocation Provision;

59.     Great American also relies upon all additional terms, conditions, exclusions, and endorsements in the Policy and not specifically identified herein that potentially limit or preclude coverage for the duty to indemnify for the Underlying Lawsuit.

60.     This dispute is ripe for resolution by this Court.

61.     Great American seeks a declaration from this Court that Great American has no duty to pay for any settlement, judgment, or other "**Loss**" in connection with the Underlying Lawsuit pursuant to the terms of the Policy

WHEREFORE, Great American respectfully requests that this Court enter judgment in its favor and against the Defendants, declaring that the Policy precludes and/or limits any indemnity coverage for the Underlying Lawsuit, and that Great American has no duty to indemnify the Defendants for any settlement, judgments or other "**Loss**" incurred for the Underlying Lawsuit, and that this Court grant Great American such other and further relief as this Court deems just and equitable under the circumstances.

281864744v.1

Dated: June 8, 2023                 Respectfully submitted,

By: /s/ *Alan Fiedel*
     Alan Fiedel
     Florida Bar No.: 905526
     **WILSON, ELSER, MOSKOWITZ,**
     **EDELMAN & DICKER LLP**
     100 Southeast Second Street, Suite 2100
     Miami, FL 33131-2126
     Telephone: (305) 374-4400
     Facsimile:  (305) 579-0261

     -and-

     James K. Thurston
     Daniel E. Tranen
     Erik J. Tomberg
     **WILSON, ELSER, MOSKOWITZ,**
     **EDELMAN & DICKER LLP**
     55 West Monroe Street, Suite 3800
     Chicago, IL 60603
     Telephone: (312) 704-0550
     Facsimile:  (312) 704-1522

     *Counsel for Great American Insurance Company*