**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ORIGIS USA LLC;<br>and GUY VANDERHAEGEN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No: 1:23-cv-22132-RNS

**DEFENDANTS' MOTION TO DISMISS AND**
**INCORPORATED MEMORANDUM OF LAW**

Defendants Origis USA LLC ("Origis USA") and Guy Vanderhaegen ("Vanderhaegen," and collectively with Origis USA, "Defendants"), through their undersigned counsel, move this court for entry of an order dismissing this action and in support state:

**INTRODUCTION**

This insurance coverage action involves actual and potential losses, including defense costs, arising from a lawsuit currently pending against Defendants and others in New York federal court (the "Underlying Lawsuit"). Although Defendants generally deny the allegations in the Underlying Lawsuit, it expressly seeks hundreds of millions of dollars in damages.

Plaintiff Great American Insurance Company ("Great American") issued one or more primary directors and officers liability ("D&O") policies to Origis USA that provide coverage to Defendants for losses at issue in the Underlying Lawsuit. Numerous other insurers (the "Additional Insurers") also issued primary and excess D&O coverage to Origis USA that provide coverage for the Underlying Lawsuit. Shortly after the Underlying Lawsuit was filed, Defendants tendered it to Great American and the Additional Insurers. Before providing any response to

Defendants' tender, Great American filed this declaratory action, claiming several coverage defenses apply to the claims and losses at issue in the Underlying Lawsuit.

Only after Great American sued Defendants in this action did it respond for the first time to their tender of the Underlying Lawsuit, almost entirely denying coverage on grounds that are without merit. Great American's sue first, talk later approach is transparently aimed at securing a tactical litigation advantage *vis a vis* its insureds before even discussing coverage with them—which it was required to do under the terms of its Policies. Notably, Great American's Amended Complaint [DE 19] (the "Complaint") alleges only claims for declaratory relief, and does not include any of the Additional Insurers as parties—notwithstanding that the allegations in the Underlying Lawsuit plainly implicate their policies.

Shortly thereafter, Defendants brought an action against Great American ***and*** the Additional Insurers in the Superior Court for the State of Delaware (the "Delaware Action"). Origis USA is a limited liability company formed under the laws of Delaware. Because certain of the Additional Insurers also are formed under the laws of Delaware, there is no diversity of citizenship among the parties to the Delaware Action—thereby barring its removal to federal court. The declaratory relief sought in the Delaware Action is the mirror-image of the declaratory relief sought by Great American in this action. The Delaware Action also includes a claim not asserted in this action (for breach of contract). Thus, the relief sought in the Delaware Action is at least as broad—if not broader—than the relief sought in this action.

Binding U.S. Supreme Court and Eleventh Circuit precedent hold that, where a federal declaratory judgment action seeks the same declaratory relief as a pending state court action and the state court action will resolve all of the issues in dispute, the federal court has full discretion to—***and should***—dismiss the federal court action in favor of the state court action. This is

- 2 -

particularly the case where, as here, an insurance coverage dispute governed by state law—rather than an issue of federal law—is being decided.  The Supreme Court has long opined that it would be "uneconomical" and "vexatious"—and would invade the jurisdiction of state courts—for a federal district court to adjudicate a declaratory judgment action concurrently with a state court action involving the same parties and same legal issues arising under state law.  Moreover, because there are claims against the Additional Insurers in the Delaware Action that are not at issue in this action, allowing this action to proceed concurrently with the Delaware Action would result in piecemeal, duplicative litigation and potentially inconsistent rulings.

In *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (hereafter "*Ameritas*"), the Eleventh Circuit provided nine "guidepost" factors to assist district courts in determining when they should dismiss federal declaratory judgment actions in favor of concurrent state court proceedings.  When applied to the facts at issue in this action, the *Ameritas* guideposts overwhelmingly favor dismissal of this action.

<u>**RELEVANT FACTS**</u>

The facts set forth herein are supported by the Defendants' Rule 3.8 Notice of Similar and Related Action and Request for Judicial Notice (the "Notice"), together with its attached exhibit.

**I.      <u>The Underlying Lawsuit</u>**

Origis USA is a Delaware limited liability company focused on clean and cost-effective solar, energy storage, and clean hydrogen solutions.  At all times relevant to the Underlying Lawsuit, Origis USA was majority-owned by Origis NV.  In February 2023, two former investors in Origis Energy NV (the "Investors") filed the Underlying Lawsuit in federal court in New York.  The Underlying Lawsuit asserts, *inter alia*, that plaintiffs in the Underlying Lawsuit improperly were induced to sell their shares in Origis Energy NV in a manner that caused them economic damage.  *See generally* Exhibit 2 to Amended Complaint [DE 19-2] (the currently-operative

Amended Complaint in the Underlying Lawsuit).  The amount of damages alleged and sought in the Underlying Lawsuit vastly exceeds the combined limits of all of the D&O insurance policies issued by Great American and the Additional Insurers.  *See Notice*, Exh. 1 (Defendants' Complaint in the Delaware Action), at ¶ 34.

Defendants have and will incur substantial costs in defending the Underlying Lawsuit ("Defense Costs").  *Id*. at ¶ 36.  None of the Defense Costs incurred to date have been paid by Great American or the Additional Insurers.  *Id*. at ¶¶ 53-55.  Moreover, although Defendants generally deny the allegations in the Underlying Lawsuit—including without limitation that they have any liability to the Investors—the Defendants also may incur costs in a judgment or settlement in the Underlying Lawsuit ("Indemnification Costs").  *Id*. at ¶ 37.  Defendants both contend their respective Defense Costs and Indemnification Costs are fully covered under the terms of the D&O policies issued by Great American and the Additional Insurers.  *See generally id.*

## II.      Defendants' Multiple Years and Multiple Layers of D&O Coverage

At all times relevant to this action, Origis USA purchased D&O coverage "towers," comprised of multiple layers of primary and excess D&O policies issued by various insurers, on an approximately annual basis.  *Id*., at ¶¶ 24-30.  Vanderhaegen is insured under these policies in his capacity as a director and officer of Origis USA.  *Id*. at ¶¶ 8, 24, 28.  At least two of these towers are implicated by the claims and losses alleged in the Underlying Lawsuit.

The first coverage tower is for the period June 10, 2021 to June 10, 2022, during which Origis USA was sold to its current ownership (*i.e*., in November 2021).  *Id*. at ¶¶ 24, 27.  This tower is implicated because, *inter alia*: (i) much of the allegedly improper conduct asserted in the Underlying Lawsuit allegedly occurred prior to November 2021; and (ii) the claim reporting period of these policies was extended to November 18, 2027 with respect to allegedly wrongful conduct

that occurred prior to the sale of Origis USA. *See generally id.* Great American was Origis USA's primary (*i.e.*, first-layer) D&O insurer during this period, and its policy during this period (the "Great American Policy") provides $5 million in available limits.[1] *Id.* at ¶ 25; *see also* Exhibit 1 to Amended Complaint [DE 19-1]. During this same annual period, Origis USA purchased three additional layers of excess D&O coverage from certain of the Additional Insurers that was excess of Great American's primary policy. *See* Notice at ¶¶ 26-27. The combined limits of this coverage tower are $20 million. *Id.* at ¶¶ 24-27.

The second coverage tower at issue is for the period February 4, 2023 to February 4, 2024—which includes Origis USA's currently-active D&O policies. *Id.* at ¶¶ 28-30. This tower is implicated by the Underlying Lawsuit because, *inter alia*, the policies in this tower are triggered by a "Claim" asserted during their policy period, and the Underlying Lawsuit is a "Claim" asserted during this period. *See id.* at ¶¶ 28-30. During this period, Origis USA purchased eight layers of primary and excess D&O coverage—with combined limits of $20 million—from certain of the Additional Insurers. *Id.* at ¶¶ 28-30. Two of the Additional Insurers in this tower, including the primary insurer, are—like Origis USA—formed under the laws of Delaware. *Id.* at ¶ 22.

### III.   Great American Tactically Sues Its Insureds Before Even Discussing Coverage With Them or Providing Any Coverage Position.

On or about March 9, 2023—shortly after being served with the initial Complaint in the Underlying Lawsuit—Defendants tendered it to Great American and the Additional Insurers for defense and indemnification under the terms of their policies. *Id.* at ¶ 38. Great American did not provide any substantive response for three months. *Id.* at ¶ 39. Then, on June 8, 2023, Great

---

[1] As set forth in Defendants' Complaint in the Delaware Action, Great American issued additional policies to Origis USA prior to its issuance of the Great American Policy that may also provide coverage for claims and losses arising from the Underlying Lawsuit. *Id.* at ¶¶ 24-25. Solely for purposes of this Motion, however, the "Great American Policy" only refers to the primary policy issued during the June 10, 2021 to June 10, 2022 coverage period.

American filed this action—without any notice to Defendants (who were awaiting Great American's coverage positions) and *before it had even shared its coverage position with Defendants*. On its face, this was a transparently tactical maneuver intended to beat Defendants to the courthouse with respect to any coverage litigation that it plainly anticipated was likely to be spawned by its extreme and incorrect coverage positions.[2] Although, as discussed below, winning the race to the courthouse is entirely irrelevant under the *Ameritas* dismissal guideposts, Great American's surreptitious sue first, talk later approach highlights the skepticism by which Great American's choice of forum should be viewed.

Only after suing its insureds did Great American finally send a letter to Origis USA on the day after filing suit (the "June 9 Letter"), which provided, for the first time, Great American's "preliminary assessment" of coverage for the Underlying Lawsuit. The June 9 Letter largely mirrors Great American's Complaint in this action, asserting that, by virtue of a bevy of purported coverage defenses, Great American does not believe coverage is available under the Policy for the Underlying Lawsuit."

Great American then amended its Complaint in this action on July 27, 2023. *See* Amended Complaint for Declaratory Relief [DE 19]. Great American's initial and Amended Complaints seek a declaration, under the federal Declaratory Judgment Act, that Great American has no coverage obligations to Defendants with respect to the claims and losses alleged in the Underlying

---

[2] The "Allocation" provision in the Great American Policy purports, in part, to govern apportionment of Defense Costs between covered and uncovered claims and insureds. *See* Exhibit 1 to Amended Complaint [DE 19-1], at Section V.B of the General Terms and Conditions. This provision expressly requires that Great American "use best efforts to agree [with Defendants] upon a fair and proper allocation" of Defense Costs." *Id*. Great American's preemptive maneuvering against its insureds was even more heavy-handed given its failure to even attempt to engage with them regarding allocation of Defense Costs prior to suing them. While best efforts were required, Great American eschewed any such efforts in its haste to secure a tactical litigation advantage against its insureds.

Lawsuit.  Neither complaint includes any of the Additional Insurers as parties.  *See generally* Complaint for Declaratory Relief [DE 1] and Amended Complaint for Declaratory Relief [DE 19].

**IV.**     **The Delaware Action Includes All of the Insurers That Potentially Provide Coverage for the Underlying Lawsuit and Seeks Broader Relief Than This Action**

Recognizing that this action does not—and cannot—provide complete relief with respect to coverage for the Underlying Lawsuit, Defendants filed the Delaware Action against Great American ***and*** the Additional Insurers on July 13, 2013.  *See* Notice, at Exh. 1.  The declaratory relief sought in the Delaware Action is the mirror-image of the declaratory relief sought in this action; that the various coverage defenses asserted by Great American in its June 9 Letter and as reflected in its initial and Amended Complaints in this action do not apply to the claims and losses at issue in the Underlying Lawsuit.  *Id*. at ¶¶ 39-40.  Thus, ***there are no claims at issue in this action that would not be fully resolved in the Delaware Action***.  In fact, because the Delaware Action also includes an additional claim (for breach of contract), the relief sought in the Delaware action is broader than the relief sought in this action.

Moreover, and critically here, the Delaware Action, unlike this action, includes all ten of the Additional Insurers as parties—including all of the excess insurers in Great American's June 10, 2021 to June 10, 2022 coverage tower and all of the insurers in the current coverage tower— representing a combined $40 million in policy limits.  *Compare* Amended Complaint for Declaratory Relief [DE 19], *with* Notice, Exh. 1.  Given that the Underlying Lawsuit seeks damages far exceeding the combined policy limits of Origis USA's potentially applicable D&O coverage, a full and cost-effective adjudication of the coverage claims arising from the Underlying Lawsuit requires the participation of the Additional Insurers as well as Great American. Thus, the Delaware Action indisputably is broader—both in terms of essential parties and claims—and provides for more complete relief than this action.

## **ARGUMENT**

**I.      Because this Action Arises Under the Federal Declaratory Judgment Act, This Court Has No Obligation to Adjudicate It and Should Exercise Its Discretion to Abstain.**

Great American pleads this action exclusively under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 (the "DJA").  *See generally* Complaint for Declaratory Relief [DE 1] and Amended Complaint for Declaratory Relief [DE 19].  As discussed above, this action and the Delaware Action are parallel proceedings since the disputed insurance coverage claims and purported defenses for which Great American seeks declaratory judgment in this action are the mirror-image of the declaratory relief sought by Defendants in the Delaware Action.  *See, e.g.*, *GEICO Gen. Ins. Co. v. Lacayo*, No. 1:15-cv-20582-KMM, 2015 U.S. Dist. LEXIS 94790, at *7 (S.D. Fla. July 21, 2015), *aff'd sub nom*, 649 Fed. App'x 647 (11th Cir. 2016) (hereafter "*Lacayo*") ("[S]uits are parallel if substantially the same parties litigate substantially the same issues in different forums.").  Thus, there are no claims or purported defenses in dispute in this action that would not be resolved in the Delaware Action if this Court dismissed this action.  Conversely, there are numerous additional insurer parties and policies at issue in the Delaware Action, as well as an additional claim, that are not at issue in this action.  If this action is permitted to proceed, it would not (and likely could not) resolve all related issues, resulting in piecemeal, duplicative litigation and potentially inconsistent rulings.

It is well-settled under federal law that the DJA "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  The Supreme Court has "repeatedly characterized the [DJA] as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citations omitted); *see also Ameritas*, 411 F.3d at 1330 (the DJA "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so.").

This admonition particularly applies to parallel federal and state court actions—like this action and the Delaware Action—where the Supreme Court has opined that it would be both "uneconomical" and "vexatious" for a federal court to adjudicate a declaratory judgment action concurrently with a state court action involving the same parties and same legal issues arising under state law. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).

As a result, courts in the Eleventh Circuit have long recognized that they have discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven-Fuel, Inc. v. Dept. of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982). In *Ameritas*, the Eleventh Circuit elaborated on this principle, providing nine, non-exclusive "guidepost" factors for district courts to consider in applying *Brillhart*'s abstention principles.

(1)  the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2)  whether the judgment in the federal declaratory action would settle the controversy;

(3)  whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4)  whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5)  whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6)  whether there is an alternative remedy that is better or more effective;

(7)  whether the underlying factual issues are important to an informed resolution of the case;

(8)  whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and,

> (9)     whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

411 F.3d at 1331.

## II.     The *Ameritas* Factors Overwhelmingly Favor Dismissal.

Courts in this Circuit applying the *Ameritas* factors routinely find that they warrant dismissal of a federal declaratory judgment action when there is pending parallel state court action. Indeed, cases like this one—"in which the identical factual and legal issues are presented in both proceedings, so that the judgment in the state action will necessarily resolve the federal declaratory judgment action"—are seen as "easy cases" to decide in favor of dismissal.  *See American Modern Prop. & Cas. Ins. Co. v. Pickett*, No. 23-0073-WS-C, 2023 U.S. Dist. LEXIS 100238, at *9-10 (S.D. Ala. June 8, 2023) (hereafter "*Pickett*") (quoting *National Trust Ins. Co. v. Southern Heating & Cooling, Inc.*, 12 F.4th 1278, 1290 (11th Cir. 2021) (hereafter "*National Trust*")).

This is particularly the case with respect to insurance coverage actions, which are inherently controlled by state law.  *See*, *e.g.*, *Cook v. Trinity Universal Ins. Co.*, 297 F. App'x 911, 914 (11th Cir. 2008) ("The construction of insurance contracts is governed by substantive state law."); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015) ("the interpretation of a contract is ordinarily a matter of state law to which [federal courts] defer").  As such, they do not implicate any issues of federal law or disputes that federal courts are better equipped to address.   As discussed below, courts in this Circuit consistently (and intuitively) recognize that issues of state law are best decided by state courts, and that there is no benefit to having a parallel federal court action proceed where—as in this case—all of the legal and factual issues in the federal action also are at issue in the state court action.

It is also abundantly clear that traditional federal deference to "first-filed" actions does not apply in the context of parallel federal and state court proceedings, because that concept is limited

to "competing claims in separate *federal* courts, not competing federal and state court actions." *Mt. Hawley Ins. Co. v. Sarasota Residences, LLC*, 714 F. Supp. 2d 1176, 1181 (M.D. Fla. 2010) (hereafter "*Mt. Hawley*") (emphasis in original); *see also Lacayo*, 2105 U.S. Dist. LEXIS 94790, at *11 (same); *Owners Ins. Co. v. Black*, No. 2:20-CV-01563-CLM, 2021 U.S. Dist. LEXIS 116221, at *14 (N.D. Ala. June 22, 2021) (hereafter "*Black*") ("Owners contends that this court should defer to the first-filed case.  But this is not the 11th Circuit's position: 'That the action in state court was filed after the federal complaint, in anticipation of the motion to dismiss, is of no moment.'") (quoting *Triple S Ref. Corp. v. Mount Canaan Full Gospel Church*, 254 F. App'x 762, 763 (11th Cir. 2007)); *Geico Gen. Ins. Co. v. Kastenolz*, 649 F. App'x 647, 650 (11th Cir. 2016) (hereafter "*Kastenolz*") ("Geico asserts that the *first-filed* rule applies not only to situations involving parallel federal proceedings, but also when there are parallel proceedings in state and federal courts. . . . Even if we were to agree with Geico's characterization, the *Ameritas* factors presuppose the existence of a prior filed federal declaratory action. . . . Therefore, to the extent that Geico relies on the actions' chronological order, its argument fails.").

Indeed, even if "first-filed" deference had any application to parallel federal and state court actions in this circuit, it is a "flexible rule designed to conserve judicial resources and avoid conflicting rulings," and is therefore trumped by the *Ameritas* considerations.  *Mt. Hawley*, 714 F. Supp. 2d at 1181.  Accordingly, the fact that Great American filed this action first is irrelevant for purposes of abstention here.

A.   <u>**Factor 1**</u>:  **Delaware Has a Strong Public Interest in Having This Dispute Adjudicated in Delaware, Whereas this Court Has No Such Interest.**

Numerous courts in the Eleventh Circuit aptly recognize that, in insurance coverage disputes like this one, state law governs, and that the state whose law is at issue has a strong public interest in having such disputes decided in that state's courts.  *See, e.g., National Trust*, 12 F.4th

- 11 -

at 1288 (district court did not err in holding that first *Ameritas* factor strongly favored dismissal of parallel federal action where Alabama law controlled the insurance coverage issue in dispute); *Lacayo*, 2015 U.S. Dist. LEXIS 94790 at *8-9 ("there is no substantive federal nexus to this cause of action—Geico's claim presents only state law issues, and its public policy implications affect only Florida insurance contracts. . . . Resolution by a state trial court, with review by a state appellate court, is therefore preferable."); *Pickett*, 2023 U.S. Dist. LEXIS 100238, at *9-10 (same result; "the fact that federal courts can, and sometimes do, resolve coverage disputes does not reflect a federal *interest* in resolving such disputes but only federal *power* to do so") (emphasis in original); *Black*, 2021 U.S. Dist. LEXIS 116221, at *11-12 (where state judicial construct of state insurance law was at issue, "then state courts should be the ones to refine their creation. . . . The strength of th[at] factor alone warrants abstention here.").

Here, Factor 1 strongly favors dismissal for at least two reasons.  First, as Delaware courts have stated clearly and frequently, Delaware has a strong public interest in having coverage disputes involving D&O policies issued to Delaware entities decided under Delaware law.  *See, e.g., RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 900 (Del. 2021) ("applying Delaware law to the D&O policies that actually cover those costs advances the relevant policies of the forum"); *Calamos Asset Mgt., Inc. v. Travelers Cas. & Surety Co. of Am.,* 2020 U.S. Dist. LEXIS 111895, at *3 (D. Del. June 25, 2020) ("[b]ecause Delaware law governs the scope and entitlement to indemnification and advancement [for a corporation's officials], applying Delaware law to the D&O policies that actually cover those costs advances the relevant policies of the forum.").

Second, because the Delaware Action involves D&O policies issued to Origis USA, which is formed under the laws of Delaware, it is highly likely that Delaware law will apply to the Delaware Action.  *See, e.g., Murdock*, 248 A.3d at 900, 907 (the state of an entity's legal formation

is the "center of gravity of the typical D&O policy"; *Calamos*, 2020 WL 3470473, at *4 ("courts 'consistently have held that Delaware law applies to disputes over directors and officers liability ('D&O') insurance coverage where, as here, the insured companies are Delaware corporations'"); *Pfizer Inc. v. Arch Ins. Co.*, 2019 WL 3306043, at *8 (Del. Super. July 23, 2019) ("[A]pplying Delaware law here accords with this Court's consistent application of Delaware law to resolve disputes over insurance coverage of directors' and officers' liability.").  And as the Eleventh Circuit cases cited above clearly opine, Delaware courts are the best arbiters of Delaware law.[3]

Thus, because the coverage disputes here are inherently governed by state law and Delaware has a strong interest in adjudicating them under Delaware law (where this Court has at best an academic interest), *Ameritas* Factor 1 strongly favors dismissal here.

**B.     Factor 2:  Judgment In this Action Would—And Cannot—Resolve the Entire Controversy At Issue Here, and Allowing the Federal Action To Proceed Simultaneously Will Result In Redundant Litigation and Potentially Inconsistent Rulings.**

As discussed in the Relevant Facts section, above, this action involves a single insurer (Great American), a single policy (representing just 12.5% of potentially-available limits) within a single coverage tower, and a single claim for declaratory judgment.  The Delaware Action, on the other hand, includes both Great American and all ten Additional Insurers whose policies are implicated by the Underlying Lawsuit.  In sharp contrast to this action, these policies encompass two full coverage towers and $40 million in limits.  Moreover, the Delaware Action provides for more complete relief than this action by including a separate breach of contract claim.

---

[3] Moreover, even in the unlikely event that the law of a state other than Delaware (*e.g.*, Florida) applies in the Delaware Action, the Delaware courts still will be adjudicating exclusively state law issues.   State courts—particularly those in Delaware—routinely decide issues involving the law of sister states.  The mere possibility—albeit remote—that the law of another state may be applied in the Delaware Action does not vest this Court with an interest in adjudicating purely state law issues that it otherwise does not possess.

In similar insurance-related cases, courts in this circuit uniformly hold that this factor favors dismissal.  *See, e.g., Ameritas*, 411 F.3d at 1331 (district court properly found Factor 2 favored dismissal of parallel federal court coverage action where district court "had before it only an incomplete set of parties and claims, and the state court action encompassed the complete controversy"); *Pickett*, 2023 U.S. Dist. LEXIS 100238, at *10-13 ("controversy" to be adjudicated per Factor 2 included related claims in state court action; because federal court action did not— and could not—include such claims, Factor 2 favored dismissal); *National Trust*, 12 F.4th at 1288-89 (district court did not err in holding that Factor 2 favored dismissal where federal court action would not resolve liability issues in underlying matter); *Westchester Surplus Lines Ins. Co. v. Romar House Ass'n*, No. 08-0455-WS-M, 2008 U.S. Dist. LEXIS 105010, at *15-17 (S.D. Ala. Dec. 29, 2008) (hereafter "*Romar*") ("The point is that a judgment in the federal declaratory action would not settle the controversy in its entirety.  For this Court to proceed here would be effectively to guarantee double-tracked litigation, with at least the Romar/Guy claims . . . proceeding in state court in tandem with the Westchester/Romar claims here.").

Federal court abstention in parallel insurance coverage actions like this one properly avoids duplicative and piecemeal litigation as well as potentially inconsistent rulings.  *See, e.g.*, *Lacayo*, 2015 U.S. Dist. LEXIS 94790, at *9 ("The second *Ameritas* factor also favors abstention. . . . [R]egardless of the outcome of this case, the parties will still have to litigate in state court.  No judgment in this federal declaratory action would settle the entire controversy.").  That is particularly the case here, as Defendants cannot simply implead all of the Additional Insurers into this action; because this action is based on diversity jurisdiction and two of the Additional Insurers (including the primary insurer in the current coverage tower) are not diverse, it is literally impossible for Defendants to obtain full relief in this action.  *See*, *e.g.*, *Romar*, 2008 U.S. Dist.

- 14 -

LEXIS 105010, at *15-16 (Factor 2 strongly favored dismissal where non-diversity of parties in state court action essentially guaranteed piecemeal litigation, redundancy, and potentially conflicting rulings).

Accordingly, *Ameritas* Factor 2 also strongly favors dismissal.

**C.      Factor 3:  Because Insurance Disputes Are Controlled by State Law, this Action Would Not Be Useful in Clarifying Any Legal Issues in Dispute.**

As interpreted by courts in this Circuit, *Ameritas* Factor 3 primarily examines whether a federal court is better positioned than a state court to decide certain legal issues—typically because such issues are driven by federal law.  Since insurance cases like this one are governed by state law, courts in this Circuit consistently recognize that Factor 3 strongly favors dismissal of the parallel federal action.  *See*, *e.g.*, *Pickett*, 2023 U.S. Dist. LEXIS 100238, at *12-13 (with respect to Factor 3, "th[is] Court has ruled that, when the state court can clarify the relations of insurer and insured at least as well as can the federal court, federal clarification serves no 'useful purpose' as required by *Ameritas*, such that this factor favors dismissal") (citing *Argonaut Great Central Ins. Co. v. Andrews*, 2015 U.S. Dist. LEXIS 20270, at *3 (S.D. Ala. Feb. 19, 2015)); *Lacayo*, 2015 U.S. Dist. LEXIS 94790, at *9 (although the federal court conceivably could resolve insurance coverage issues, Factor 3 nonetheless favored abstention due to the "inefficiencies and judicial burden" caused by resolving the remaining claims in state court—which "would greatly outweigh any useful purpose in such resolution.").

Here, Great American's Amended Complaint makes clear that there are no issues of federal law to be adjudicated.  *See generally* Amended Complaint for Declaratory Relief [DE 19]. Accordingly, *Ameritas* Factor 3 also strongly favors dismissal.

**D.**      <u>**Factor 4**</u>**:  This Action Plainly Is Being Used For "Procedural Fencing" In Hopes of Securing a Federal Forum That Would Not Otherwise Be Available.**

As discussed in Section III of the Relevant Facts *supra*, Great American sued the Defendants in this action without any prior notice to (or discussions with) Defendants and ***before it had even provided its initial coverage position***.  On its face, Great American's surreptitious sue first, talk later tactic was intended to secure its preferred federal court forum at the expense of its insureds—who were patiently awaiting Great American's coverage position.

Great American's "procedural fencing" is further manifest by its failure to join the Additional Insurers as parties in this action.   When Great American filed this action, it was fully aware that Defendants had numerous other insurers that may provide coverage for the Underlying Lawsuit.  Yet Great American did not join any of the Additional Insurers in this action because it undoubtedly understood that doing so likely would destroy diversity and thereby preclude adjudication in its preferred federal court forum. *See, e.g., Pickett*, 2023 U.S. Dist. LEXIS 100238, at \*14 (with respect to *Ameritas* Factor 4, an insurer's declaratory judgment action against its insured before advising of its coverage position, or that it was contemplating denying coverage or filing a declaratory judgment action, could properly be read a "bolt out of the blue and that [insurer] intended to lull [insured] into complacency in order to secure its favored, federal forum and a head start in a race for *res judicata*.").   Ultimately, Great American was correct—it could not have brought this action in this Court if it had joined all of the implicated Additional Insurers given that at least two of them are non-diverse.

Because Great American's preemptive and surreptitious filing of this action (in hopes of depriving Defendants of a more appropriate state court forum) and failing to join essential parties (in order to preserve diversity), represents precisely the type of "procedural fencing" that *Ameritas* Factor 4 was intended to address, it strongly favors dismissal of this action.

**E.** **Factor 5:  Permitting this Action to Proceed Would Increase Friction Between Federal and State Courts and Improperly Encroach on State Court Jurisdiction.**

With respect to parallel insurance coverage actions, allowing the federal action to proceed "would amount to the unnecessary and inappropriate 'gratuitous interference'" with the state court action—particularly where, as in this action, the federal action is not broader in scope than the state court action.  *Ameritas*, 411 F.3d at 1332.  Indeed, by allowing the federal action to proceed, a federal court would improperly encroach on state court jurisdiction, thereby increasing friction between federal and state courts.  *See, e.g.*, *National Trust*, 12 F.4th at 1289 (district court did not err in determining "that a federal ruling on whether carbon monoxide qualified as a pollutant under the policy exclusion, an unresolved issue under Alabama law, would risk increased friction between federal and Alabama courts."); *Romar*, 2008 U.S. Dist. LEXIS 105010, at *19-20 (magistrate judge "correctly noted that the pendency of identical Alabama law claims between identical parties in this declaratory action and the parallel state court action would beget inter-forum tension. . . . For this Court to announce its expectation that the state court will step aside and allow a federal court to adjudicate the questions of Alabama law involving the same parties and pending in both fora would, in itself, amount to gratuitous interference with the state court action."); *Pickett*, 2023 U.S. Dist. LEXIS 100238, at *22-23 (same).

Precisely the same applies here given that this action and the Delaware Action are parallel insurance coverage actions that are inherently controlled by state law.  Accordingly, *Ameritas* Factor 5 also strongly favors dismissal.

**F.** **Factor 6:  There Is No Alternative Remedy Here That Would Be More Effective Than Dismissal of this Action.**

Courts in this Circuit uniformly recognize—particularly as to parallel federal and state court coverage actions like those at issue here—that "an all-encompassing state action is a 'vastly

- 17 -

superior remedy' because the state court 'can more effectively and efficiently decide the overlapping issues.'" *Pickett*, 2023 U.S. Dist. LEXIS 100238, at *22-23; *see also National Trust*, 12 F.4th at 1289 (even though unresolved state insurance law question possibly could be certified to Alabama Supreme Court, Factor 6 favored dismissal because state court forum plainly was better positioned to resolve the entire dispute); *Romar*, 2008 U.S. Dist. LEXIS 105010, at *21 (magistrate judge did not err in opining that "having all of the claims arising from the Romar insurance dispute adjudicated in a single state court proceeding would be 'more efficient,' such that this guidepost favors abstention. . . . [H]aving one court address the insurance-related issues . . . is clearly more efficient than having two courts address them redundantly in an overlapping, piecemeal, splintered approach."); *Lacayo*, 2105 U.S. Dist. LEXIS 94790, at *9 ("The sixth factor articulated in *Ameritas* likewise supports abstention.  The state court can provide an alternative remedy that is better and more effective: it can dispose of the entire controversy at once. Adjudication of multiple claims by a single court is no doubt better and more effective.").

As the Delaware Action can resolve all of the coverage claims and defenses arising from the Underlying Lawsuit and this action cannot, *Ameritas* Factor 6 strongly favors dismissal.

G.      **Factors 7 and 8**:  **Because the Delaware Action Is Substantially Broader Than This Action, It Is the Only Court That Can Resolve All Disputed Factual Issues Relevant to Coverage for the Underlying Lawsuit.**

As discussed in Section II.B., above, both this action and the Delaware Action seek resolution of Defendants' rights to D&O coverage for claims and losses arising from the Underlying Lawsuit.  While this action involves only the Great American Policy, the Delaware Action involves twelve policies issued by eleven different insurers in two different coverage towers.  Thus, any factual issues that would be decided in this action necessarily are subsumed in the broader Delaware Action and would be decided in that action.

Conversely, any factual issues involving insurers other than Great American and policies other than the Great American Policy would ***not*** be decided in this action.  Thus, if this action were to proceed, factual determinations still would be required in the Delaware Action in order to fully resolve Defendants' rights to coverage.  Concurrent coverage litigation almost certainly would result in duplicative evidence being presented in both actions.  *See, e.g.*, *National Trust*, 12 F.4th at 1290 ("On that basis, the district court concluded that the parties would be presenting duplicative evidence and that the state court was better placed to evaluate those facts. We find no abuse of discretion as to the seventh and eighth [*Ameritas*] guideposts.")  As discussed in Section II.B., above, this is precisely the type of redundant and piecemeal litigation the *Ameritas* factors are intended to preclude.  *See*, *e.g.*, *Romar*, 2008 U.S. Dist. LEXIS 105010, at *22-23 ("With respect to the eighth *Ameritas* guidepost, which concerns whether the state court is in a better position to evaluate factual issues than is the federal court, the Report and Recommendation concluded that this factor favored abstention because . . . '[i]t is more efficient for one court to undergo the fact-finding process and handle all disputes than for two courts to separately undergo the process and handle the claims piecemeal.' . . . Th[is] Court agrees.").

Accordingly, *Ameritas* Factors 7 and 8 also strongly favor dismissal.

H.      **Factor 9:  Delaware Has a Close Nexus to the Issues in Dispute Here and a Strongly-Stated Public Interest In Deciding Them, Whereas There Are No Questions of Federal Law at Issue and No Federal Interest in Adjudicating Purely State Law Issues.**

As discussed in Section II.A. above, with respect to Factor 1, the insurance coverage disputes in this action solely implicate state law—most likely Delaware law.  There simply is no federal interest in resolving the myriad coverage issues raised by Great American.  In contrast, Delaware courts have expressed a strong public interest in having coverage disputes involving D&O policies issued to Delaware entities (like Origis USA) decided under Delaware law.

Abstention here is more than just comity; respect for divergent state law interests, laws, and policies is required.  Accordingly, *Ameritas* Factor 9—like Factor 1—favors dismissal of this action.  *See, e.g.*, *Pickett*, 2023 U.S. Dist. LEXIS 100238, at \*29 ("When, as here, the federal declaratory action 'raises exclusively state law issues and implicates exclusively state law public policies, with no reference whatsoever to federal common or statutory law,' th[e ninth *Ameritas*] guidepost 'unambiguously weighs in favor of' dismissal.") (internal citations omitted); *Black*, 2021 U.S. Dist. LEXIS 116221, at \*10-12 ("above all, federalism—embodied by the first and ninth *Ameritas* factors—weighs heavily in favor of abstention.  The Alabama Supreme Court (not the state legislature) created the procedure for fronting insurance settlement offers in the context of consent-to-settle clauses in *Lambert* . . ..  If the '*Lambert* advance' is a state court creation, then state courts should be the ones to refine their creation.  . . . The strength of the factor alone warrants abstention here.").

## CONCLUSION

As discussed above, every one of the nine *Ameritas* guideposts strongly favors dismissal of this action and none favors allowing it to proceed.  For all of the foregoing reasons, therefore, this action should be dismissed.

Dated: August 18, 2023

Respectfully submitted,

**REED SMITH LLP**
200 S. Biscayne Blvd., Ste 2600
Miami, FL 33131
Telephone: (786) 747-0200
Fax: (786) 747-0299

/s/ *R. Hugh Lumpkin*
**R. Hugh Lumpkin** (SBN 308196)
hlumpkin@reedsmith.com
**Christopher T. Kuleba** (SBN 105302)
ckuleba@reedsmith.com

**Stephen T. Raptis**, *pro hac vice*
sraptis@reedsmith.com
lnite@reedsmith.com

*Counsel for Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 18, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record *via* transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ R. Hugh Lumpkin*
　　　R. Hugh Lumpkin